UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

Joseph Alonso Fontalvo,

                    Plaintiff,              **MEMORANDUM & ORDER**
                                            #22-CV-03076(EK)

          -against-

Commissioner of Social Security,

                    Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Joseph Alonso Fontalvo challenges the Social
Security Administration's denial of his claim for disability
insurance benefits.  Before the court are the parties' cross-
motions for judgment on the pleadings.  For the following
reasons, I grant the Commissioner's motion and deny Plaintiff's
cross-motion.

## I.  Background

### A.  Procedural Background

          On January 20, 2015, Fontalvo applied for disability
benefits, alleging a disability onset date of November 9, 2004.
Administrative Tr. ("Tr.") 88, ECF No. 9.  The agency denied his
claim.  Tr. 133.  A hearing was scheduled before an
administrative law judge ("ALJ"), but Fontalvo failed to appear,
and ALJ David Suna entered an order of dismissal in May 2017.
Fontalvo filed a request for review with the Appeals Council,

which was granted.  *Id.*  The case was returned to ALJ Suna, who rejected Fontalvo's claim on the merits on February 1, 2019. *Id.*  Once again, the Appeals Council granted Fontalvo's request for review.  *Id.*  The Appeals Council vacated the hearing decision and remanded for further proceedings.  *Id.*

On August 17, 2020, a new hearing was held before ALJ Margaret Pecoraro, following which she, too, concluded that Fontalvo was not disabled and therefore not entitled to disability benefits.  Tr. 133-54.  The Appeals Council denied Fontalvo's request for review of ALJ Pecoraro's decision, rendering it final.  Tr. 1-6.  Fontalvo timely sought review of that decision in this court.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ

evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Fontalvo had not engaged in substantial gainful activity since his alleged onset date.  Tr. 136.  The ALJ also determined that Fontalvo suffered from the severe impairments of attention deficit hyperactivity disorder (ADHD), anxiety disorder, and asthma.  *Id.*  However, the ALJ also determined that none of these severe impairments rose to the level of a Listed Impairment.  *Id.*

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ concluded here that Fontalvo had the RFC to perform "a full range of work at all exertional levels"

but with several "nonexertional limitations." Tr. 138. Those
limitations included that the work must not occur "in
environments where there are dust, fumes, gases, odors, poor
ventilation or temperature extremes." *Id*. Additionally, the
ALJ found that Fontalvo's RFC was "limited to simple routine and
repetitive tasks not at a production rate pace,"[1] "limited to
simple decision-making," and limited to not more than frequent
interaction with others. *Id.*

At step four, the ALJ considers whether, in light of
the RFC determination, the claimant could perform "past relevant
work." 20 C.F.R. § 404.1520(f). Here, however, the ALJ found
that Fontalvo had no prior work experience; analysis of this
step was unnecessary. Tr. 144. At step five, the burden shifts
to the Commissioner. *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646
F. App'x 123, 127 (2d Cir. 2016). At this point, the ALJ
evaluates whether the claimant could perform jobs existing in
significant numbers in the national economy. 20 C.F.R.
§ 404.1520(g). The ALJ determined that Fontalvo could perform
such jobs, including as a callout operator, merchandise marker,
cafeteria attendant, mail clerk, and deli cutter. Tr. 144-45.

---

[1] Courts have defined "production rate pace" in the context of a social
Security appeal as work at the fixed pace of an assembly line. *See Rivera v.
Comm'r of Soc. Sec.*, 2022 WL 4482374, at *2 (S.D.N.Y. Sept. 27, 2022); *Albizu
v. Berryhill*, 335 F.Supp.3d 355, 382 (E.D.N.Y 2018).

Given that assessment, the ALJ concluded that Fontalvo was not disabled.  Tr. 145-46.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[2]

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

## III.  Discussion

Fontalvo raises three arguments on appeal.  First, he argues that the ALJ should have accorded his treating psychiatrist's opinion greater weight in her decision.  Second, Fontalvo alleges that the ALJ failed to consider the amount of

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

his likely absences from a job.  Third, despite his alleged limitations involving pace, concentration, and persistence, Fontalvo contends that the ALJ only incorporated "pace" into his RFC.

## A.    The ALJ Appropriately Weighed the Treating Physician's Opinion

Fontalvo argues that the ALJ should have afforded the opinion of his treating psychiatrist more than "minimal weight." Pl.'s Mot. J. Pleadings ("Pl.'s MJP") at 13, ECF No. 13. Specifically, Fontalvo argues that the ALJ did not properly apply the "treating physician rule" to the opinion of his psychiatrist, Dr. Faisal Chaudhry.  *Id.*

Dr. Chaudhry opined on May 4, 2018 — after having treated Fontalvo for three months — as follows.  Tr. 867. He wrote that Fontalvo's anxiety and ADHD resulted in "poor memory, appetite disturbance, sleep disturbance, mood disturbance, emotional lability, recurrent panic attack, paranoia, difficulty thinking/concentrating, social withdrawal/isolation, decreased energy, persistent irrational rears, and generalized persistent anxiety."  Tr. 143.  He described limitations in Fontalvo's ability to understand, remember, and carry out detailed instructions, maintain attention and concentration, perform at a consistent pace, deal with stress or semi-skilled or skilled work, and get along with coworkers and peers.  Tr. 143.

However, he also indicated that Fontalvo had "no restriction of
activities of daily living," Tr. 870, and "no or mild loss" in
his ability to "ask simple questions or request assistance;
adhere to basic standards of neatness and cleanliness, use
public transportation; make simple work-related decisions;
maintain regular attendance and be punctual," and carry out,
understand, and remember short, simple instructions.  Tr. 869.

        The treating physician rule required (prior to its
repeal) that "the opinion of a claimant's treating physician as
to the nature and severity of the impairment is given
controlling weight so long as it is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is
not inconsistent with the other substantial evidence in the case
record."[3]  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008);
*see also* 20 C.F.R. § 404.1527(c)(2).  Some district judges have
suggested that in cases involving mental health, a treating
physician's opinion is due special deference.  *See Bodden v.
Colvin,* 14-CV-08731 at *19 (S.D.N.Y Dec. 14, 2015) (noting that
a treating physician for mental health develops a nuanced
understanding of the patient's health that is hard to achieve in
a single visit); *Canales v. Comm'r of Soc. Sec'y*, 698. F. Supp.
2d. 335, 342 (E.D.N.Y. 2010) ("Because mental disabilities are

_____

        [3] The treating physician rule is applicable to claims, such as this one,
that were filed before March 27, 2017.  20 C.F.R. § 416.927.

difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important...."").

Where, as here, "the ALJ decided not to afford controlling weight to the treating physicians' opinions, she [is] required to explicitly review the factors listed in 20 C.F.R. § 404.1527(c) to determine what (if any) lesser weight to give those opinions." *Schillo v. Kijakazi,* 31 F.4th 64, 78 (2d Cir. 2022). Those four factors are referred to as the "*Burgess* factors": "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing *Burgess*).

If the ALJ does not "explicitly" apply these four factors, she commits procedural error and a potential ground for remand exists. *See Schillo,* 31 F.4th at 75; *Burgess*, 537 F.3d at 129-30. However, this error is harmless and will not result in remand if two conditions are met. First, if the ALJ has "otherwise provided good reasons for [the] weight assessment...." *Schillo,* 31 F.4th at 75. Second, if a "searching review of the record" indicates that "the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96.

ALJ Pecoraro accorded this opinion "minimal weight." She properly noted the (then-prevailing) legal standard: that Dr. Chaudhry's opinion was entitled to controlling weight unless it was not backed by medically acceptable techniques or was inconsistent with other substantial evidence in the record.  Tr. 143; 20 C.F.R. § 416.927(c)(2).  She did not, however, expressly analyze each of the *Burgess* factors by name, though she extensively discussed factor three and touched on factors one and two.  *See Estrella,* 925 F.3d at 95-96 (outlining the *Burgess* factors); Tr. 143.  But the ALJ need not undertake a "slavish recitation of each and every factor" where her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013); *see also Jones v. Berryhill*, 415 F. Supp. 3d 401, 416 n.5 (S.D.N.Y. 2019) ("An ALJ need not advert to every one of the *Burgess* factors ....").

As to the first factor — the frequency, length, nature, and extent of Dr. Chaudhry's treatment — she stated only that she had reviewed "various treatments notes from 2015 through 2020," and but that those records revealed "gaps in treatment." Tr. 139.[4]  The second *Burgess* factor, the quantum of

---

[4] While the ALJ did not so state, Dr. Chaudhry had seen Fontalvo only three times before he issued his opinion in this matter.  Tr. 867 (Chaudhry began seeing Fontalvo monthly in March 2018; his opinion is dated May 2018). The opinion of a treating physician who saw the patient only a few times is due less deference than that of a treating physician with a years-long relationship with the patient.  *See* 20 C.F.R. § 404.1527(c)(2)(i).  Though

"medical evidence supporting the opinion," also received fairly cursory treatment: the ALJ noted, for example, that a "psychiatric consultative examination noted 'significant cognitive deficits'" emanating from Fontalvo's ADHD, and that the consultative examiner found Fontalvo to be "confused." *Id.* at 137.

The ALJ's analysis did expressly satisfy the third *Burgess* factor: regarding "the consistency of [Chaudhry's] opinion with the remaining medical evidence." *Estrella,* 925 F.3d at 96.  She clearly indicated that Dr. Chaudhry was not in line with the other evaluating experts, stating that:

> [T]he assessments of marked limitations are contradicted by the substantial evidence as demonstrated by multiple mental status examinations which have been generally within normal limits, the claimant's daily activities and the specific symptoms and clinical findings noted in the check off area are not supported by multiple progress reports and objective examination findings."  Tr. 143.

In the end, the ALJ did not give the *Burgess* factors the clear application required.  This was error.  *See Schillo,* 31 F.4th at 75; *Burgess*, 537 F.3d at 129-30.  As discussed below, however, that error was harmless.  The ALJ did set forth

---

Dr. Chaudhry continued to treat Fontalvo after the date of his opinion, Tr. 1176, these later sessions generally speak to more moderate symptoms than Dr. Chaudhry expressed in his May 2018 opinion, and none express *more* severe symptoms.  *See e.g.*, Tr. 1182 ("patient reports he has been doing better"); Tr. 1194 ("patient reports that he is feeling okay . . . since he started incorporating some of his learned information he is feeling less anxious and more productive).  Consequently, deeper analysis of the first *Burgess* factor would not have supported Fontalvo's position.

her reasoning in a manner that met the conditions set out in *Schillo and Estrella*.  She provided "good reasons" for her weight assessment and did not "traverse" the "substance of the treating physician rule."  *Schillo,* 31 F.4th at 75; *Estrella*, 925 F.3d at 96.

As suggested above, the ALJ found that Dr. Chaudhry's opinion was contradicted by other substantial evidence.  Tr. 143; 20 C.F.R. § 416.927(c).  First, the ALJ provided "good reasons" for assigning minimal weight to Dr. Chaudhry's opinion. *Schillo,* 31 F.4th at 75.  When assigning minimal weight to Dr. Chaudhry's opinion, the ALJ considered the evidence provided by two other physicians and three other Ph.D. psychiatric consultants who examined Fontalvo.  Tr. 141-143.  She assigned different weight to the statements of each evaluating expert. The other physicians and Ph.D. psychiatric consultants generally found that Fontalvo's mental status examinations were within normal limits.  Tr. 141-43.  Indeed, the examiners, *including* Dr. Chaudry, reported that during examinations, Fontalvo was alert, concentrating, and cooperative.  Tr. 141-43; 714-15; 723-24; 746-47; 1181-82; 1193-94; 1205-06; 1252; 1326-27; 1357; 1363.  When attending physical health appointments, Fontalvo's psychiatric status was normal.  Tr. 893; 912; 933; 960; 990; 1017; 1026; 1033; 1044; 1063; 1077; 1115; 1168; 1238.

The ALJ assigned "considerable weight" to Dr. David
Mahony's evaluation.  Tr. 142.  Dr. Mahony observed that
Fontalvo had mild difficulties following and understanding
simple directions and performing simple tasks independently,
moderate difficulties maintaining attention and concentration,
and marked limitations performing complex tasks.  Tr. 142.
However, Dr. Mahony also found that Fontalvo had "no
difficulties making appropriate decisions, relating to others,
and dealing with stress."  Tr. 142.  Dr. Mahony's description of
Fontalvo's symptoms and limitations is more circumscribed than
that of Dr. Chaudhry.  The existence of significant
contradictory evidence is a "good reason" to grant a treating
physician's opinion less controlling weight than provided by the
default rule.

The ALJ also found that Dr. Chaudhry's opinion was
"contradicted by the substantial evidence" presented regarding
Fontalvo's daily habits.  Tr. 143.  The ALJ elaborated that the
"claimant's daily activities and the specific symptoms and
clinical findings noted in the check off area [of Dr. Chaudhry's
report] are not supported by multiple progress notes and
objective findings."  Tr. 143. Indeed:

> [M]any mental status examinations found the claimant alert
> and oriented x3, intact attention/concentration, intact
> memory, cooperative with providers/examiners, able to
> report his medical history, engage[d] in self-care, and
> other activities of daily living such as playing video

games for 2 hours per day, attending art school, doing art
illustrations, and obtaining his GED after he filed his
application.   Tr. 143.

Attending multi-hour art classes and earning a GED require
focus, persistence, and implementation of learned skills.
Moreover, while the treating physician's opinion is given
heightened attention in mental health cases, *Canales,* 698 F.
Supp. at 342, these objective examination findings support the
ALJ's conclusion that the treating physician's opinion was due
minimal weight.   *See Watson v. Berryhill,* 732 F. App'x 48, 52
(2d Cir. 2018) (plaintiff's activities that included, among
others, "playing basketball, composing music as therapy, and
grocery shopping one to two times monthly," supported mental
RFC); *Rusin v. Berryhill,* 726 F. App'x 837, 840-41 (2d Cir.
2018) (affirming mental RFC when plaintiff's activities included
shopping for groceries every two weeks, walking for exercise,
spending "time with his friends but not on a regular basis,"
watching documentaries, and paying bills).

        Thus, the ALJ's analysis revealed two different ways
in which the substantial evidence contradicted Dr. Chaudhry's
opinion: (a) medical findings presented by other physicians; and
(b) distinctions in Fontalvo's lifestyle from his own reports.
Tr. 143.   These contradictions represent a "good reason" to
assign minimal weight to the treating physician's opinion.

*Schillo,* 31 F.4th at 75 ("good reasons" are "reasons supported by substantial evidence in the record").

In addition to "good reasons" for the weight the ALJ assigned to Dr. Chaudhry's opinion, I must also assess whether the ALJ "traverse[d]" the "substance of the treating physician rule." *Estrella*, 925 F.3d at 96.  I conclude that she did not traverse the substance of the rule because she tacitly discussed three out of four *Burgess* factors: Consideration of contradictory evidence; the amount of medical evidence supporting the opinion; and whether the doctor is a specialist. Indeed, as described above, the ALJ found the existence of contradictory evidence critical when discounting the opinion of the treating physician.  Tr. 143.  Moreover, the ALJ acknowledged that the treating physician was a psychiatrist, thus a specialist on mental health issues, and analyzed the amount of evidence to support different contentions regarding Fontalvo's symptoms and limitations.  *See* Tr. 141-43. Consequently, since the ALJ advanced both "good reasons" for the weight ascribed to the treating physician's opinions and did not traverse the treating physician rule, the ALJ made only a harmless error when not expressly analyzing the *Burgess* factors.

The Second Circuit recently found that an ALJ provided an insufficient explanation for affording "little weight" to a mental health treating physician's opinion in a social security

case.  *See Richards v. Comm'r of Soc. Sec.*, No. 23-486, 2024 WL
1673279 (2d Cir. April 18, 2024) (summary order).  There, the
ALJ found that the treating physician's opinion was not
consistent with "objective mental status examination findings."
*Id.*  However, that ALJ did not cite records contrary to the
treating physician's opinion, and "did not explain why these
purported inconsistencies [between the treating physician's]
opinion . . . and the mental status examination findings . . .
warranted discounting the opinion."  *Id.*

        Fontalvo's case is distinguishable from *Richards* and
consistent with other instances in which the Second Circuit
affirmed an ALJ's denial of benefits based on a "functional
application of the *Burgess* factors."  *Curry v. Comm'r of Soc.
Sec.*, 855 F. App'x 46, 49 (2d Cir. 2021) (summary order); *see
also Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021)
(summary order)  (affirming the Commissioner's decision denying
benefits despite "the ALJ's failure to explicitly discuss each
of the four [*Burgess*] factors"); *Halloran v. Barnhart*, 362 F.3d
28, 31-32 (2d Cir. 2004) (affirming the Commissioner's decision,
even though it was "unclear on the face of the ALJ's opinion
whether the ALJ considered (or even was aware of) the
applicability of the treating physician rule").  Here, unlike
the ALJ's analysis in *Richards,* the ALJ's opinion was supported
by substantial evidence, as described above.  She cited multiple

records contrary to the treating physician's opinion and explained why these distinctions resulted in discounted weight afforded to the treating physician's opinion.  Tr. 141-43.

In the Social Security context, the meaning of "substantial" involves a threshold for evidentiary sufficiency that is "not high." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019).  The ALJ's opinion may be upheld, even if there is also substantial evidence – Dr. Chaudhry's opinion – to support a different outcome. *See Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012).  The ALJ's error in failing to fully articulate the *Burgess* factors was harmless; substantial evidence supports the ALJ's finding that the treading physician's opinion may be afforded limited weight.

**B.   The ALJ Sufficiently Considered Plaintiff's Possible Absences from Work**

Beyond the treating physician rule, Fontalvo argues that the ALJ did not consider how potential absences from work would affect his ability to hold a job. *See* Pl.'s MJP at 20. James Conway, a Vocational Expert who testified at Fontalvo's second hearing, noted that a working person cannot be off task more than 15% of the time, have more than one unexcused absence per month, or arrive late or leave early from work more than twice a month. *See* Tr. 55-57.  Fontalvo's treating physician opined that he would be absent from a job three or more times

per month.  *See* Tr. 868.   Thus, Fontalvo alleges that the ALJ
improperly concluded that he would be able to maintain gainful
employment that requires daily attendance.  *See* Pl.'s MJP at 20.

However, the ALJ pointed appropriately considered
Fontalvo's potential absences from work.  She properly granted
Dr. Chaudhry's opinion limited weight, as discussed above, in
part due to internal contradictions in the opinion.  Tr. 143.
Moreover, once the ALJ properly discounted Dr. Chaudhry's
opinion, this argument must fail: Dr. Chaudhry's opinion is the
only evidence stating that Fontalvo would miss three or more
days of work per month.  *See* Tr. 868.  Indeed, Dr. Chaudhry also
checked a box in his report noting that Fontalvo had "*no/mild
loss*" in his ability to "maintain regular attendance and be
punctual."  Tr. 869 (emphasis added).

Other medical professionals who examined Fontalvo
agreed with Dr. Chaudhry's latter conclusion: maintaining
attendance is not a significant limitation for Fontalvo.  Tr.
869; 142; 715; 769.  The ALJ did not explicitly name this
discrepancy as the reason for discounting Dr. Chaudhry's opinion
of Fontalvo's ability to timely attend work.  Tr. 143.  However,
the ALJ broadly named inconsistencies contained within Dr.
Chaudry's opinion as important to her decision-making.  Tr. 143.
Moreover, the ALJ noted that the limitations in Dr. Chaudhry's
opinion were not supported by the overall record.  Tr. 143.

The Second Circuit has opined that even when an explicit reason for discounting a portion of an opinion is missing, the finding may be upheld when, as here, the reason for the weight assigned is adequately explained. *See Bennett v. Comm'n of Soc. Sec.,* No. 22-281, 2023 WL 355156 at *3 (2d Cir. Jan. 23, 2023) ("Although neither the ALJ nor the Appeals Council offered explicit reasons for discounting the portion of Dr. Alao's opinion addressing Bennett's ability to maintain a consistent schedule, both adequately explained the reasons for assigning the opinion limited or little weight.").

Second, the ALJ directly addressed how much time Fontalvo would miss from work when in dialogue with the Vocational Expert and through Vocational Interrogatories. During a colloquy with Vocational Expert Conway, discussed above, as well as through Vocational Interrogatories with Andrew Vaughn, an additional neutral representative, the ALJ analyzed how Fontalvo's limitations with adhering to a schedule affected the jobs he could hold in the national economy.  Tr. 144-145. Specifically, the ALJ asked Vocational Expert Conway "the tolerance for [being] off task" at any of the jobs he proposed. Tr. 55.  The ALJ did not ask Vocational Expert Vaughn the same question because "the representative responded to the proffer that the [ALJ] did not pose limitations concerning off task or a schedule, however, the [ALJ] had already asked [] vocational

expert [Conway] who testified at the hearing questions regarding off task, absences, and occasional difficulty sustaining concentration and pace."  Tr. 145.

Both Vocational Experts indicated that there are jobs that Fontalvo could perform within the national economy consistent with a more moderate absence record than Dr. Chaudhry projected.  Tr. 144-45; *see also Smith v. Comm'r of Soc. Sec.*, 528 F. Supp. 3d 66, 67-68 (E.D.N.Y. 2021) (limiting an RFC to (a) simple, routine, and repetitive tasks at less than production rate; (b) making only simple work-related decisions; and (c) limiting contact with others is appropriate for accommodating moderate schedule limitations).

Thus, there is substantial evidence indicating that the ALJ sufficiently considered Fontalvo's potential absences from work when calculating the RFC.  She considered the views of neutral experts and appropriately discounted the view of an outlier physician opinion.

**C.   The ALJ Properly Calculated Fontalvo's RFC**

Finally, Fontalvo argues that the ALJ improperly limited his RFC.  *See* Pl.'s MJP at 21-22.  The ALJ found that Fontalvo had moderate limitations when "concentrating, persisting, or maintaining pace."  *See* Tr. 137.  She outlined his RFC as "simple, routine and repetitive tasks not at a production rate pace; limited to simple decision-making; able to

19

adapt to changes in a routine simple work setting." *See* Tr. 138. Fontalvo alleges that this RFC improperly limited his work only with respect to pace, and should have included limitations arising from his difficulties with concentration and persistence. *See* Pl.'s MJP at 21-22.

The ALJ's RFC language does, however, recognize Fontalvo's limitations concentrating and persisting. The restriction to simple, routine, and repetitive tasks is an accommodation properly geared to difficulties in concentration. CITE. And the recognition that Fontalvo cannot work "at a production rate pace" is responsive to his limitations in persisting. In the end, the ALJ essentially limited Fontalvo to unskilled work. *See Decker v. Sec'y of Health and Human Servs.,* 647 F.2d 291, 295 (2d Cir. 1981) (unskilled work is work that requires little judgment in performing simple duties); *see also Springfield v. Comm'r of Soc. Sec.,* No. 16-CV-6947, 2019 WL 1508994, at *6, *13 (E.D.N.Y. Mar. 31, 2019) (upholding determination of ALJ that limited plaintiff to simple, unskilled, low-stress jobs; low stress defined as no work at a fixed production rate).

And the limitation to unskilled work is consistent with an RFC reflecting limitations in concentration and persistence, particularly where, as here, the ALJ made stress accommodations. *See Herrera v. Comm'r of Soc. Sec.,* No. 19-CV-

4869, 2021 WL 25362, at *2 (E.D.N.Y Jan. 4, 2021) ("Moderate limitations, including limitations in concentration and management of stress, are generally consistent with unskilled work."); *McIntyre v. Colvin,* 758 F.3d 146, 150-51 (2d Cir. 2014) (finding that the ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low-stress work involving limited contact with others); *Springfield,* 2019 WL 1508994, at *6, *13 (RFC for simple, unskilled, low-stress jobs accounted for moderate difficulties with regard to concentration, persistence, or pace). Moreover, in considering the propriety of a question to a vocational expert, the Second Circuit explained that failure to explicitly incorporate certain limitations in an RFC is harmless error if evidence shows that the plaintiff can "engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and that the challenged hypothetical was limited to unskilled work or implicitly accounted for the plaintiff's limitations. *McIntyre,* 758 F.3d at 150-51.

In Fontalvo's case, the ALJ limited him to unskilled work because his RFC included "simple, routine and repetitive tasks not at a production rate pace; limited to simple decision-making . . . ." Tr. 138. Consequently, even though the ALJ did not explicitly enumerate that she was also limiting Fontalvo to

21

tasks appropriate for individuals with moderate concentration and persistence limitations, these limitations were implied through the RFC as written.  *See Herrera,* 2021 WL 25362, at *2. At worst, this is harmless error because there is substantial evidence that Fontalvo can engage in tasks beyond those that are merely simple and routine, despite his pace, concentration, and persistence errors.  *McIntyre,* 758 F.3d at 150-51.  Fontalvo earned his GED during the pendency of this case and he attends weekly art classes.  *See* Tr. 140.  Consequently, the ALJ applied the correct legal standard and analyzed sufficient evidence when crafting the RFC.

### III.  Conclusion

For the foregoing reasons, the Commissioner's motion is granted, and the Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    May 1, 2024
          Brooklyn, New York